1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HERBERT R. PEARSE,

               Plaintiff,

     v.

FIRST HORIZON HOME LOAN
CORPORATION, et al.,

               Defendants.

CASE NO. C16-5627 BHS

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS

     This matter comes before the Court on the motion to dismiss (Dkt. 12) filed by
Bank of New York Mellon f/k/a Bank of New York, as Trustee for First Horizon
Mortgage Pass-Through Trust 2007-AR3 ("BNYM"); First Tennessee Bank National
Association, successor in interest by merger to First Horizon Home Loan Corporation
("First Horizon"); Mortgage Electronic Registration Systems, Inc. ("MERS"); and
NationStar Mortgage LLC ("NationStar") (collectively "Defendants"). Also before the
Court is Defendants' request for judicial notice. Dkt. 13. The Court has considered the
pleadings filed in support of and in opposition to the motion and the remainder of the file
and hereby grants the motion for the reasons stated herein.

# I. PROCEDURAL HISTORY

On June 10, 2016, Herbert R. Pearse ("Plaintiff") filed a complaint against Defendants in Pierce County Superior Court. Dkt. 1-1. Plaintiff also filed an emergency motion for a temporary restraining order. Dkt. 10-1 at 3–6. On July 14, 2016, Defendants removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Dkt. 1. On July 19, 2016, Plaintiff and Quality Loan Service Corporation of Washington ("QLSC") filed a stipulation of nonparticipation as to QLSC in Pierce County Superior Court. Dkt. 10-1 at 119–21.

On July 20, 2016, Defendants filed a motion for extension of time to file an answer or other responsive pleading. Dkt. 9. Plaintiff did not oppose the motion for extension, and the Court granted it. Dkt. 14. On August 4, 2016, Defendants filed their motion to dismiss, presently before the Court. Dkt. 12. On August 23, 2016, Plaintiff responded. Dkt. 15. On August 26, 2016, Defendants replied. Dkt. 18.

# II. FACTUAL BACKGROUND

On August 9, 2007, Plaintiff executed a Promissory Note (the "Note") for $650,000 payable to First Horizon. Dkts. 1-1, 13-1.[1] First Horizon indorsed the note in blank. Dkt. 13-1 at 7. Plaintiff also executed a deed of trust securing repayment of the Note (the "Deed of Trust"). Dkts. 1-1, 13-2. The Note was secured by property located at

---

[1] The documents attached to Defendants' Request for Judicial Notice (Dkt. 13) are loan documents or records regarding the Property. These documents are incorporated by reference into the Complaint, as they are extensively referred to therein and form the basis of Plaintiff's claims. Therefore, the Court may consider them without converting Defendants' motion into one for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1   18709 108th Street Court, Gig Harbor, WA 98329 (the "Property"). Dkts. 1-1, 13-2. The

2   Deed of Trust named Commonwealth Land Title Co. as the trustee and MERS as a

3   beneficiary acting as "nominee for Lender and Lender's successors and assigns." Dkt. 13-

4   2 at 3. It also established the lender's right to appoint a successor trustee. *Id.* at 14.

5        On June 16, 2011, Plaintiff received a letter from First Horizon titled "Notice of

6   Intent to Foreclose" dated June 13, 2011. Dkt. 1-1 at 4. The letter stated that First

7   Horizon was the creditor. *Id.* Plaintiff received additional similar letters. *Id.*

8        On August 29, 2011, an Assignment of Deed of Trust ("Assignment 1") was

9   recorded in Pierce County whereby MERS assigned its interests under the Deed of Trust

10  to BNYM. Dkt. 1-1 at 5; Dkt. 13-3 at 2. On October 18, 2011, another assignment

11  ("Assignment 2") was recorded in Pierce County whereby MERS again purported to

12  assign the Deed of Trust to BNYM. Dkt. 1-1 at 5; Dkt. 13-3 at 3.

13       On December 2, 2015, BNYM named QLSC as the successor trustee under the

14  Deed of Trust by recording an Appointment of Successor Trustee in Pierce County. *Id.*

15  On December 15, 2015, QLSC caused a Notice of Default to be personally delivered to

16  and posted on Plaintiff's residence. *Id.* On December 21, 2015, Plaintiff sent a letter to

17  QLSC stating that foreclosure was improper and requesting that the foreclosure

18  proceeding be cancelled. *Id.* at 7. On January 22, 2016, QLSC responded by letter stating

19  its opinion that it believed the foreclosure was proper. *Id.*

20       On February 22, 2016, QLSC recorded a Notice of Trustee's Sale in Pierce

21  County stating that it would sell the Property on June 24, 2016. Dkt. 13-4. The Notice

22  indicated that Plaintiff was $248,951.47 in arrears. Dkt. 13-4 at 3. The notice also

1    referenced both the Deed of Trust and the assignment from MERS to BNYM. *Id.* On July

2    21, 2016, after Plaintiff commenced this action, QLSC recorded a Notice of

3    Discontinuance of Trustee's Sale. Dkt. 13-5.

4                                    **III. DISCUSSION**

5    **A.    Formatting and Timing**

6            Based on Defendant's motion, Dkt. 18 at 2, the Court directs Plaintiff to the

7    Court's rules for the timing of motions and briefing. Local Rules W.D. Wash. LCR 7(d).

8    Also, the Court *sua sponte* directs Plaintiff's attorney to the Western District of

9    Washington's local rules regarding the form of pleadings, motions and other filings for

10   line-spacing and margin requirements. Local Rules W.D. Wash. LCR 10(e)(1).

11   **B.    12(b)(6) Standard**

12           Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil

13   Procedure may be based on either the lack of a cognizable legal theory or the absence of

14   sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d

15   696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is

16   construed in Plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983).

17   To survive a motion to dismiss, the complaint need not state detailed factual allegations,

18   but it must provide the grounds for entitlement to relief and not merely a "formulaic

19   recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

20   544, 555 (2007). Plaintiff must allege "enough facts to state a claim to relief that is

21   plausible on its face." *Id.* at 547.

22

1    The scope of review on a 12(b)(6) motion to dismiss is generally limited to the

2    contents of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

3    The Court, however, may consider documents that are not attached to the complaint "if

4    the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily

5    relies on them." *Id.* (internal quotation marks omitted).

6    **C.    Statute of Limitations**

7    Plaintiff brings claims against First Horizon and MERS for promissory fraud,

8    misrepresentation, civil conspiracy, unjust enrichment, breach of fiduciary duty, slander

9    of title, and violations of the Washington Consumer Protection Act ("CPA").

10   Plaintiff's claims against First Horizon and MERS are time-barred. Plaintiff does not

11   dispute the applicable periods of limitation, but rather argues that his claims are preserved

12   under the discovery rule. Dkt. 15 at 12–13. Regardless of whether the discovery rule

13   applies, Plaintiff's claims against First Horizon or MERS are untimely.

14   Actions for fraud, breach of fiduciary duty, unjust enrichment, and civil

15   conspiracy are all subject to a three year limitation. RCW 4.16.080(2) (civil

16   conspiracy/breach of fiduciary duty); RCW 4.16.080(3) (unjust enrichment); RCW

17   4.16.080(4) (fraud/misrepresentation). An action under the CPA is subject to a four year

18   limitation. RCW 19.86.120.

19   "The general rule is that 'a cause of action accrues and the statute of limitations

20   begins to run when a party has the right to apply to a court for relief.'" *Shepard v.*

21   *Holmes*, 185 Wn. App. 730, 739 (2014) (quoting *O'Neil v. Estate of Murtha*, 89 Wn.

22   App. 67, 69–70 (1997)). However, claims of fraud are "not to be deemed to have accrued

1    until the discovery by the aggrieved party of the facts constituting the fraud." RCW

2    4.16.080(4). Additionally, in an exception to the general rule of accrual, Washington

3    courts apply the discovery rule "where injured parties do not, or cannot, know they have

4    been injured." *Shepard*, 185 Wn. App. at 739 (quotation omitted).

5         Plaintiff argues that under the discovery rule, the statute of limitations "only

6    begins to run when the facts for the claim are discovered by the claimant." Dkt. 15 at 12.

7    To support his argument, Plaintiff explains that he only became aware of the facts

8    supporting his claims in October of 2015 after receiving the results of a forensic audit. *Id.*

9    However, Plaintiff's short discussion of the statute of limitations lacks any citation to

10   legal authority and misstates the discovery rule. *See* Dkt. 15 at 12–13. Under the

11   discovery rule, "a cause of action accrues when the plaintiff, *through the exercise of due*

12   *diligence, knew or should have known* the basis for the cause of action." *Shepard*, 185

13   Wn. App. at 739 (quoting *Green v. Am. Pharm. Co.*, 86 Wn. App. 63, 66 (1997), *aff'd*,

14   136 Wn.2d 87 (1998)) (emphasis added). "[W]hen a plaintiff is placed on notice by some

15   appreciable harm occasioned by another's wrongful conduct, the plaintiff must make

16   further diligent inquiry to ascertain the scope of the actual harm." *Aventa Learning, Inc.*

17   *v. K12, Inc.*, 830 F. Supp. 2d 1083, 1095–96 (W.D. Wash. 2011). "The plaintiff is

18   charged with what a reasonable inquiry would have discovered." *Id.* at 1096.

19        Plaintiff's claims against First Horizon and MERS are based on the allegations

20   that (1) First Horizon concealed the fact his loan would be securitized; (2) First Horizon

21   wrongly stated that Plaintiff would qualify for an interest rate below 7.5%; (3) the

22   securitization violated the terms of the Note in regards to the application of Plaintiff's

1  payments; (4) MERS was named as an allegedly improper beneficiary in the Deed of

2  Trust; and (5) MERS assigned interests in the Deed of Trust that it allegedly did not own.

3  *See* Dkt. 1-1 at 16–30.

4        The events of which Plaintiff complains in regards to First Horizon occurred in

5  connection with the origination of the loan in August of 2007. Dkts. 1-1, 13-1, 13-2.

6  MERS was named as "beneficiary" and nominee for the lender on the Deed of Trust at

7  the same time. Dkt. 13-2. The assignments by MERS were recorded in August and

8  October of 2011. Dkt. 13-3. To the extent Plaintiff argues that he was injured by the

9  securitization of his loan, the inclusion of MERS on the Deed of Trust should have placed

10 him on notice. *See Hummel v. Nw. Tr. Servs., Inc.*, No. C15-255RAJ, 2016 WL 3093255,

11 at *5 (W.D. Wash. Mar. 23, 2016). Moreover, to the extent Plaintiff claims that he was

12 injured by MERS assigning its rights under the Deed of Trust, the public recording of

13 those assignments similarly placed him on notice. *See Shepard*, 185 Wn. App. at 740.

14 Nine years have passed since MERS was included as a beneficiary on the recorded Deed

15 of Trust. Five years have passed since MERS transferred its interests under the Deed of

16 Trust via a publicly recorded assignment. The periods of limitation have run on Plaintiff's

17 claims against First Horizon and MERS as they arise from the alleged misrepresentations

18 about the securitization of the loan and the assignments of the Deed of Trust.

19       Moreover, Plaintiff fails to provide any explanation regarding how the Notice of

20 Intent to Foreclose he received from First Horizon in 2011 was insufficient to place him

21 on notice of his alleged harms. Thus the discovery rule does not save these claims.

22

1  **D.      "Wrongful Foreclosure"**

2       Plaintiff claims that BNYM, QLSC,[2] and NationStar wrongfully attempted to

3  foreclose on the Property. However, Plaintiff makes no allegations that Defendants have

4  actually foreclosed on the Property. Washington's Deeds of Trust Act ("DTA") "does not

5  create a cause of action for violations of its terms in the absence of a completed

6  foreclosure sale." *Frias v. Asset Foreclosure Servs.*, 181 Wn.2d 412, 422 (2014).

7  Accordingly, Plaintiff does not state a cognizable claim under the DTA.

8       Plaintiff argues that his "wrongful foreclosure" claim against BNYM and

9  NationStar nonetheless states a cognizable claim under the CPA. Indeed, "[e]ven in the

10  absence of a completed foreclosure sale, violations of the DTA may be actionable under

11  the CPA under ordinary CPA principles." *Frias*, 181 Wn.2d at 430. "To prevail on a CPA

12  action, the plaintiff must show '(1) unfair or deceptive act or practice; (2) occurring in

13  trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business

14  or property; (5) causation.'" *Bain v. Metro. Mortgage Grp., Inc.*, 175 Wn.2d 83, 115

15  (2012) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105

16  Wn.2d 778, 780 (1986)).

17       Plaintiff's CPA claim for "wrongful foreclosure" is based on the allegation that

18  BNYM is not "the holder in due course with rights of enforcement." Dkt. 1-1 at 24.

19  However, Assignment 2 purported to transfer all rights formerly in MERS under the

20

21  ---

22      [2] The Court again notes that QLSC and Plaintiff have stipulated to QLSC's
nonparticipation in this action. Dkt. 10-1 at 119–21.

1    Deed of Trust to BNYM and the Note was indorsed in blank by First Horizon. Dkt. 13-3

2    at 3; Dkt. 13-1 at 7.

3            If an indorsement is made by the holder of an instrument and it is not a
             special indorsement [as defined by RCW 62A.3–205(a)], it is a 'blank
4            indorsement.' When indorsed in blank, an instrument becomes payable to
             bearer and may be negotiated by transfer of possession alone until specially
5            indorsed.

6    RCW 62A.3-205(a). Through mere possession of the Note, indorsed in blank by First

7    Horizon, BNYM may be the lawful owner with an enforceable right to receive payment.

8    *See Ukpoma v. U.S. Bank Nat. Ass'n*, 12-CV-0184TOR, 2013 WL 1934172, at *3 (E.D.

9    Wash. May 9, 2013) ("By being in possession of the note [indorsed in blank], [the holder]

10   is the lawful owner . . . ."). Indeed, "[t]he transfer of the note carries with it the security,

11   without any formal assignment or delivery, or even mention of the latter." *Carpenter v.*

12   *Longan*, 83 U.S. 271, 275 (1872); *see also McAfee v. Select Portfolio Servicing, Inc.*, 193

13   Wn. App. 220, 228 (2016). Plaintiff admits that the possession of a promissory note

14   indorsed in blank may establish the holder's right to payment. Dkt. 15 at 10.

15           Plaintiff has failed to allege that BNYM is not the holder of the Note indorsed in

16   blank.[3] Instead, Plaintiff argues that BNYM cannot own the Note because to do so would

17   violate the terms of the collateral pooling and service agreement for the trust that BNYM

18   represents. However, "[t]he majority of Ninth Circuit courts have held that 'plaintiffs lack

19   standing to challenge noncompliance with a PSA in securitization unless they are parties

20   _____

21          [3] Plaintiff does argue that the Note was not indorsed in blank. Dkt. 15 at 10. However,
     Plaintiff has plainly ignored the indorsement in blank found on the actual document. *See* Dkt. 13-
22   1 at 7. Additionally, Plaintiff has made no argument that the indorsement is somehow
     ineffective.

to the PSA or third party beneficiaries of the PSA.'" *Alexander v. Wells Fargo Bank,*
*N.A.*, No. C15–459RAJ, 2015 WL 5123922, at *3 (W.D. Wash. Sept. 1, 2015) (quoting
*Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1155 (N.D. Cal. 2013)).
Plaintiff lacks standing to attack BNYM's alleged violation of the pooling and service
agreement and Plaintiff's argument that the assignments violated the terms of that
agreement falls short of alleging that BNYM lacks the actual Note.

Plaintiff also appears to allege that BNYM cannot be the holder of the Note
because MERS was improperly involved in the transfers in the chain of title. This is
merely a variation of the common "show me the note" theory that Courts in our district
have uniformly rejected. *Bigelow v. Nw. Tr. Servs.*, C14-5798BHS, 2016 WL 4363199, at
*4 (W.D. Wash. Aug. 16, 2016). Such a theory is insufficient to show that BNYM is not
the proper holder of the Note.

The Court also rejects Plaintiff's argument that securitization rendered his debt
uncollectable by a subsequent holder of the Note. *See* Dkt. 1-1 at 23. "Securitization
merely creates a separate contract, distinct from the Plaintiffs' debt obligations under the
Note, and does not change the relationship of the parties in any way." *Wilson v. Bank of*
*Am., N.A.*, C12-1532JLR, 2013 WL 275018, at *8 (W.D. Wash. Jan. 24, 2013) (quoting
*Bhatti v. Guild Mortgage Co.*, C11-0480JLR, 2011 WL 6300229, at *5 (W.D. Wash.
Dec. 16, 2011), *aff'd in part*, 550 Fed. Appx. 514 (9th Cir. 2013)). While the Court can
not cite the unpublished opinion in *Velasco v. Discover Mortgage Co.* as binding
Washington authority, the Court agrees with its reasoning and is compelled by its
consistency with the decisions of other courts in this district and the Ninth Circuit at

1   large. *See* 187 Wn. App. 1003 (2015) ("[S]ecuritization does not discharge the

2   [borrower's] obligation to pay the promissory note.") (citing *In re Nordeen*, 495 B.R.

3   468, 479–80 (B.A.P. 9th Cir. 2013)).

4         Plaintiff has made no allegations that BNYM did not actually gain possession of

5   the Note. Nor has Plaintiff alleged that BNYM failed to secure its rights under the Note

6   prior to appointing QLSC as successor trustee or beginning foreclosure proceedings in

7   December of 2015. Additionally, while Plaintiff claims that Defendants have wrongfully

8   sent him letters notifying him of his default in attempts to collect his debt, he fails to

9   dispute the fact of his default. Having failed to adequately allege a dispute regarding his

10  default or BNYM's ownership of his debt, Plaintiff has failed to state any deceptive

11  practice by BNYM, NationStar, or QLSC. Accordingly, Plaintiff fails to allege a

12  cognizable "wrongful foreclosure" claim under the CPA.

13  **E.     Breach of Fiduciary Duty and Misrepresentation**

14        Plaintiff also brings claims against NationStar and QLSC for breach of fiduciary

15  duty and misrepresentation. Dkt. 1-1 at 18–22. Both of these claims are primarily based

16  on Plaintiff's argument that "BNYM was never legally 'assigned' the beneficial interest

17  in the subject Deed of Trust by virtue of the fact that Defendant MERS had no authority

18  to 'assign' such interest." *Id.* at 19–21. As explained above, Plaintiff has failed to

19  sufficiently plead that BNYM is not the owner of Plaintiff's debt. Plaintiff has also

20  therefore failed to allege that QLSC was not properly appointed as successor trustee by

21  BNYM or that it was impossible for the owner of the loan to properly apply his payments

22  toward the loan's "principal" or "interest."

1    **F.    Unjust Enrichment**

2          Plaintiff's unjust enrichment claim against Defendants is likewise based on the

3    premise that the securitization of Plaintiff's loan was somehow wrongful. Dkt. 1-1 at 25–

4    26. Specifically, Plaintiff alleges that "[d]ue to the nature of the securitization transaction

5    terms and conditions . . . every single dollar Plaintiff paid into the loan as down payment,

6    closing costs, fees, monthly mortgage payments, late fees, and any other charges related

7    thereto, has been misapplied." Dkt. 1-1 at 25.

8          Despite this conclusory allegation, Plaintiff has failed to allege that his debt under

9    the Note was not properly reduced pursuant to his successful payments from 2007

10   through late 2010. As explained above, "[s]ecuritization merely creates a separate

11   contract, distinct from the Plaintiffs' debt obligations under the Note, and does not

12   change the relationship of the parties in any way." *Wilson*, 2013 WL 275018 at *8. The

13   allegation that BNYM satisfied its obligations under the pooling and services agreement

14   of the securitized trust, a separate and collateral transaction to the Note, is insufficient to

15   allege that the owner of Plaintiff's debt failed to properly account for Plaintiff's payments

16   and their effect on the outstanding "principal" and "interest" of his loan transaction.

17   Plaintiff has accordingly failed to state a claim for unjust enrichment.[4]

18

19   _____

20        [4] Moreover, as Defendants have indicated, Plaintiff's complaint and the documents
     incorporated therein clearly show that Plaintiff is in default since at least early 2011. Dkt. 1-1 at
     5; Dkt. 13-4. As stated above, the inclusion of MERS on the Deed of Trust placed Plaintiff on
21   notice of the securitization back in 2007. It appears that any of Defendants' actions in regards to
     Plaintiff's payments and their dispersion according to the terms of the securitized trust would fall
     outside of the statute of limitations for an action of unjust enrichment as briefed by the parties.
22   *See* RCW 4.16.080(3); Dkt. 12 at 5; Dkt. 15 at 12.

## G.     Civil Conspiracy and Fraud

Plaintiff also brings a claim for civil conspiracy and fraud against Defendants. Specifically, Plaintiff claims that Defendants entered into a fraud conspiracy. Plaintiff's claim appears to be based on (1) the inclusion of MERS in the loan transaction, (2) MERS' assignments of the Deed of Trust, and (3) Defendants' efforts to foreclose after Plaintiff's default. As explained above, insofar as Plaintiff's claim arises from the inclusion of MERS in the transaction or the subsequent assignments by MERS, his claim is untimely. Regardless of the statute of limitations, Plaintiff has failed to satisfy the heightened pleading requirement for fraud claims set forth in Fed. R. Civ. P. 9(b), which requires that he "state with particularity the circumstances constituting fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

To properly state a claim, Plaintiff must allege:

(1) Representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 130 Wn.2d 486, 505 (1996).

The Deed of Trust clearly sets forth MERS' intended role in Plaintiff's loan transaction. Dkt. 13-2. None of Plaintiff's allegations suggest that the statements in the Deed of Trust about MERS' intended role were false. While Plaintiff argues that referring to MERS as a beneficiary was inapposite under *subsequently* established Washington

1  law[5], Plaintiff's allegations fall short of stating that MERS and First Horizon did not

2  intend to act according to the terms of their agreement. Moreover, Plaintiff's allegations

3  fail to set forth any cognizable theory whereby the inclusion of MERS as a purported

4  beneficiary under the Deed of Trust injured his rights or his ability to satisfy his

5  obligations under the Note. Indeed, his complaint shows that he successfully made

6  payments on his loan for years prior to defaulting. "The mere inclusion of MERS in a

7  loan transaction also does not support a fraud claim." *Dietz v. Quality Loan Serv. Corp.*

8  *of Washington*, C13-5948 RJB, 2014 WL 1245269, at *4 (W.D. Wash. Mar. 25, 2014).

9  Plaintiff has failed to state a claim for fraud or civil conspiracy.

10  **H.     CPA**

11           Plaintiff argues that First Horizon and MERS violated the CPA by inducing

12  Plaintiff to enter the loan, securitizing the loan, listing MERS as a beneficiary under the

13  Deed of Trust, and assigning MERS' interests under the Deed of Trust in 2011. Dkt. 1-1

14  at 28. As explained above, such claims are untimely. Plaintiff also argues that BNYM

15  QLSC, and NationStar violated the CPA by servicing and enforcing the loan. This is the

16  same argument as Plaintiff's claim for "wrongful foreclosure," which the Court has

17  already explained lacks a cognizable legal theory.

18  **I.     Slander of Title**

19           Plaintiff also brings two claims for slander of title. The first arises from the

20  Assignment of the Deed of Trust and MERS role in respect to the assignments. The

21  _____

22       [5] *See Bain*, 175 Wn.2d at 120.

1    second arises from the Notice of Foreclosure and attempts to foreclose on the Property.

2    "Slander of title is defined as: (1) false words; (2) maliciously published; (3) with

3    reference to some pending sale or purchase of property; (4) which go to defeat plaintiff's

4    title; and (5) result in plaintiff's pecuniary loss." *Rorvig v. Douglas*, 123 Wn.2d 854, 859

5    (1994). "Malice is not present where the allegedly slanderous statements were made in

6    good faith and were prompted by a reasonable belief in their veracity." *Brown v. Safeway*

7    *Stores, Inc.*, 94 Wn.2d 359, 375 (1980).

8            The assignments in 2011 contain no reference to some pending sale or purchase of

9    property. Dkt. 13-3. As stated above, Plaintiff has failed to adequately allege a dispute

10   regarding his default or BNYM's ownership of his debt, which means he has failed to

11   allege any false statements or words made in the process of his foreclosure. Accordingly,

12   Plaintiff has failed to plead a cognizable claim for slander of title.

13   **J.    Quiet Title**

14          Plaintiff's claim to quiet title in the Property must likewise fail. "In order to quiet

15   title, a plaintiff must allege facts showing that he has satisfied his obligations under the

16   deed of trust." *Hummel*, 2016 WL 3093255 at *7 (citing *Evans v. BAC Home Loans*

17   *Servicing LP*, No. C10–0656 RSM, 2010 WL 5138394, at *4 (W.D. Wash. Dec. 10,

18   2010)). Plaintiff has made no indication that he has satisfied his debt obligations. Instead,

19   he has argued that the securitization of the Note voided those obligations. This theory has

20   been routinely rejected in this district. *Id.*; *Young v. Quality Loan Serv. Corp.*, C14-

21   1713RSL, 2015 WL 12559901, at *1 (W.D. Wash. July 7, 2015). The Washington Court

22   of Appeals for Division II has likewise rejected Plaintiff's theory. *See also Velasco*, 187

1    Wn. App. 1003 (collecting cases). Accordingly, Plaintiff has failed to allege any theory

2    whereby the Court could determine that he holds superior title and his quiet title action

3    must be dismissed.

4    **K.    Cancellation of Instruments**

5           Plaintiff also claims that all documents and instruments related to his mortgage

6    should be cancelled and expunged because the securitization of his loan prevented the

7    Note holder from offering unencumbered title upon the satisfaction of Plaintiff's

8    obligations. Dkt. 1-1 at 27. Plaintiff alleges that this constitutes fraud in the inducement

9    and that the "mortgage agreement should be declared *void ab initio*." Dkt. 15 at 22. As

10   stated above, "[s]ecuritization merely creates a separate contract, distinct from the

11   Plaintiffs' debt obligations under the Note, and does not change the relationship of the

12   parties in any way." *Wilson*, 2013 WL 275018 at *8. Plaintiff has failed to state a

13   cognizable theory on how the securitization of his loan or the inclusion of MERS as a

14   beneficiary on the Deed of Trust could constitute fraud or render the Note unenforceable.

15   The Court will not cancel his debt or the surrounding loan instruments

16   **L.    Dismissal with Prejudice**

17          When granting a Rule 12(b)(6) motion to dismiss, the Court may dismiss the

18   claims with or without prejudice, and with or without leave to amend. To the degree that

19   the Court dismisses Plaintiff's claims for failure to allege sufficient facts, Plaintiff has

20   requested leave to amend his complaint so that he may allege additional specific facts that

21   support his claim. Dkt. 15 at 23. "[A] district court should grant leave to amend . . .

22   unless it determines that the pleading could not possibly be cured by the allegation of

1   other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th

2   Cir. 1990). Where the facts are not in dispute, and the sole issue is whether there is

3   liability as a matter of substantive law, the Court may deny leave to amend. *Albrecht v.*

4   *Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

5        Plaintiff's claims against First Horizon and MERS are barred by the statute of

6   limitations and any amendment thereto would be futile. Any amendment to Plaintiff's

7   effort to cancel his loan instruments would likewise be futile, as his arguments lack any

8   underlying cognizable theory. Therefore, the Court denies Plaintiff leave to amend his

9   claims against MERS and First Horizon or his action to cancel the recorded loan

10  instruments.

11       Plaintiff's claims for fraud, civil conspiracy, slander of title, misrepresentation,

12  quiet title, unjust enrichment, and violations of the CPA against BNYM, NationStar, or

13  QLSC are based wholly on his theory that BNYM cannot be the Note holder due to

14  MERS' role in transfers in the chain of title and the securitization of the Note. While

15  Plaintiff's present theory is not cognizable insofar as it is based on MERS' role in the

16  transfers of the Deed of Trust and the securitization process, the Court is not absolutely

17  certain that such claims cannot otherwise be cured through fact-based amendment.

18       For instance, if true, Plaintiff could amend his complaint to allege that he has paid

19  his debts in full and that Defendants are somehow asserting title to the Property rather

20  than pursuing foreclosure on a lien, thereby curing the defects in his quiet title action.

21  Plaintiff could conceivably plead misrepresentation, CPA, fraud, civil conspiracy, and

22  slander of title claims by alleging some unknown set of facts (other than his present

1    securitization theory) that suggest BNYM is not the note holder. In his claim for unjust

2    enrichment, Plaintiff could allege that he made payments to Defendants subsequent to his

3    default in 2011 and within the period of limitations. These possible amendments are

4    provided only as examples, and are not an exclusive list of the possible changes whereby

5    Plaintiff could cure his deficient claims. Accordingly, the Court grants Plaintiff leave to

6    amend his complaint regarding these claims against BNYM, NationStar, and QLSC.

7                             **IV. ORDER**

8         Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 12) is

9    **GRANTED** as follows:

10         Plaintiff's claims against First Horizon and MERS are **DISMISSED WITH**

11    **PREJUDICE**.

12         Plaintiff's claims for fraud, civil conspiracy, unjust enrichment, slander of title,

13    quiet title, misrepresentation, and violations of the CPA against BNYM, NationStar, and

14    QLSC are **DISMISSED WITHOUT PREJUDICE**.

15         Plaintiff is **GRANTED leave to amend** his claims for fraud, civil conspiracy,

16    unjust enrichment, slander of title, quiet title, misrepresentation, and violations of the

17    CPA against BNYM, NationStar, and QLSC. Plaintiff shall file an amended complaint, if

18    warranted, no later than November 11, 2016.

19         Dated this 12th day of October, 2016.

20

21                            _____

22                            BENJAMIN H. SETTLE
                             United States District Judge